**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: abaskin@baskinrichards.com
         lross@baskinrichards.com
Name and Arizona State Bar No.:
Alan Baskin #013155 (admitted pro hac vice)
Leslie Ross #027207 (admitted pro hac vice)

Edward S. Zusman (SBN 154366)
Kevin K. Eng (SBN 209036)
MARKUN ZUSMAN FRENIERE & COMPTON LLP
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 438-4515
Facsimile: (415) 434-4505

*Attorneys for Defendant Scottsdale Capital Advisors*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| MYECHECK, Inc., a California corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>SWEETSUN INTERTRADE, INC., SEVEN MILES SECURITIES, TITAN INTERNATIONAL SECURITIES, INC., SCOTTSDALE CAPITAL ADVISORS CORPORATION, and Does 1 -- 20, Inclusive,<br><br>                                    Defendants. | Case No.  2:14-cv-02889-KJM-AC<br><br>**DEFENDANT SCOTTSDALE CAPITAL ADVISOR'S MOTION TO DISMISS UNDER RULE 12(b) or (d), FED.R.CIVP. AND RULE 19, FED.R.CIV.P.**<br><br>*(Assigned to Hon. Kimberly J. Mueller)*<br><br>Date:         July 10, 2015<br>Time:         10:00 a.m.<br>Judge:       Hon. Kimberly J. Mueller<br>Trial Date:    n/a<br>Action Filed: Dec. 11, 2014 |

As to Defendant Scottsdale Capital Advisors Corporation ("SCA"), the Plaintiff's First Cause of Action asks the Court to issue a declaration against SCA that five issuances totaling over 1.4 billion shares of stock in Plaintiff MYEcheck, Inc. ("MYEcheck" or "Plaintiff") between December 21, 2011 and August 22, 2013 were void from their inception and should be cancelled because they were enticed by false representations from Defendant Sweetsun Intertrade, Inc. ("Sweetsun"). Plaintiff's Third Cause of Action asks the Court to enjoin SCA from transferring any of some 530,005,000 shares of MYEcheck stock that are supposedly still held by certain defendants. SCA has never owned any of the relevant shares, does not have on deposit for clients any certificates for shares of MYEcheck stock, and has not had any such stock on deposit for clients since May, 2014. And, while Plaintiff might have sought relief at a time while SCA still held MYEcheck shares on deposit for clients, because SCA no longer holds any MYEcheck shares, Plaintiff has no ability to seek relief through a judgment against SCA. Therefore the claims against SCA are non-justiciable because: 1) a judgment would not redress any harms to Plaintiff; 2) the claims are moot due to Plaintiff's prior inaction; 3) the relief sought against SCA is impossible; and 4) the Plaintiff lacks standing under the federal Declaratory Judgments Act. More, Plaintiff is guilty of laches in any event. The claims against SCA must therefore be dismissed under Rule 12(b)(1,6) or Rule 12(d), Fed.R.Civ.P.

Finally, because the Plaintiff has not elected to sue any of the many innocent third parties who actually hold the shares at issue, its Complaint fails to join necessary parties required under Rules 12(b)(7) and 19, Fed.R.Civ.P. and should also be dismissed for that reason.

**I.     Plaintiff Allowed Its Stock Shares To Be Transferred.**

Three years ago, Plaintiff MYEcheck began issuing shares of restricted stock in MYEcheck to third parties as directed by Defendant Sweetsun. [Complaint at ¶ 13]. MYEcheck claims it issued the restricted stock because it believed Sweetsun had the legal right to command that such stock be issued. MYEcheck now claims Sweetsun fraudulently

2

created that belief and that Sweetsun actually had no authority to command MYEcheck to issue any shares of its stock. [*See* Complaint at ¶¶'s 12-18].

The "restricted stock" at issue involves "securities acquired in unregistered, private sales from the issuing company or from an affiliate of the issuer." http://www.sec.gov/investor/pubs/rule144.htm (U.S. Securities and Exchange Commission website). Restricted stock shares are almost always evidenced by share certificates stamped with a "restrictive" legend, which "indicates that the securities may not be resold in the marketplace unless they are registered with the SEC or are exempt from the registration requirements." http://www.sec.gov/investor/pubs/rule144.htm (U.S. Securities and Exchange Commission website). Shares of restricted stock may be exempt from registration and available for sale in the marketplace if they first meet certain conditions established by federal law, specifically those in SEC Rule 144, 17 C.F.R. § 230.144. Rule 144 provides a "safe harbor" for sales of restricted stock shares. Once they meet the exemption requirements, the stock certificates may have their "restrictive" legends removed.

SCA is a registered broker dealer that clears and sells restricted stock. [*See* Exhibit "A" hereto at ¶ 2 (Declaration of D. Michael Cruz ("Cruz") dated June 1, 2015)].[1] When restricted stock is deposited with SCA, it conducts due diligence to ensure that the stock meets certain federal conditions such that it can be sold in the marketplace as free trading and marketable securities. [*See Id.* at ¶ 3]. That is precisely the service that SCA provided for the MYEcheck stock owners. SCA never owned MYEcheck stock, nor does the Complaint allege SCA ownership. [*Id.* at ¶ 4]. Instead, SCA merely held the certificates for

---

[1] Under the "incorporation by reference" doctrine, a district court ruling on a motion to dismiss may consider a document whose contents are alleged in a complaint and the authenticity of which no party questions, but which is not physically attached to the Plaintiff's pleading. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (quotation and further citations omitted). Here, the Cruz declaration incorporates documents referred to in paragraphs 23-24 of the Complaint. The underlying communications between MYEcheck and SCA also reveal that it should come as no surprise that the remaining MYEcheck stock deposited at SCA was sold into the marketplace after SCA told Plaintiff it was not going to interfere with subsequent sales. To the extent the Court determines otherwise, this Motion has been filed alternatively pursuant to Rule 12(d).

purposes of obtaining confirmation for the owners after due diligence that the shares were in fact properly marketable under the applicable federal rules before they were transferred in sales to other purchasers.  [*Id.* at ¶¶'s 4-5].

Plaintiff admits that 910,000,000 shares of stock in MYEcheck were issued to Sweetsun in three transactions between January and August, 2013, each of which was also directed by Sweetsun.  [Complaint at ¶ 17].[2]  Plaintiff alleges that Sweetsun, not SCA, caused the transfer agent to fraudulently issue the shares. [*Id.*].

SCA's role was limited to conducting the type of due diligence and confirmation of exemption services on deposited restricted shares as described above.  After confirming the marketability of the shares, SCA lifted the restriction on transfer, making the shares freely tradable.  [*See* Exhibit "A" hereto at ¶ 6].  As a result, Sweetsun sold over 700 million shares of MYEcheck stock into the marketplace prior to mid-November 2013, with the sales beginning in February 2013.  [*See* Complaint at ¶¶'s 23, 28; Exhibit "A" hereto at ¶ 7]. As acknowledged in the Complaint, MYEcheck did not complain to SCA about the issuance of the shares until on or about November 13, 2013, after hundreds of millions of the shares about which it now complains had been sold.   [*See* Complaint at ¶¶'s 22-23; Exhibit "A" hereto at ¶ 10].

The Complaint alleges that on November 13, 2013, Plaintiff notified SCA that the MYEcheck shares had been obtained fraudulently and were being cancelled, and requested that SCA freeze trading in the MYEcheck stock.  [Complaint at ¶ 23].  MYEcheck's communications casts doubt on MYEcheck's claims that it was alerting SCA, or anyone related to SCA, of any specific allegations about fraud.  Instead, a November 13, 2013 letter

---

[2]  Plaintiff alleges that in 2012 it agreed to issue 255,000,000 shares of its stock at Sweetsun's direction, which directed the shares to be issued to Defendant Titan International Securities, Inc. [Complaint at ¶¶'s 13-14].  Titan attempted to deposit these shares at SCA, but the deposit was not accepted. [Exhibit "A" hereto at ¶ 8]. Seven Mile Securities is also a named defendant in connection with 275,000,000 MYEcheck shares allegedly issued to it on January 4, 2013, but these shares were not deposited at SCA.  [*See* Complaint at ¶¶ 17, 28; Exhibit "A" hereto at ¶ 9]. Defendant Seven Mile Securities has never maintained an account at SCA. [Exhibit "A" hereto at ¶ 9].

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
Telephone 602-812-7979
Facsimile 602-595-7800

on behalf of MYEcheck to non-party Alpine Securities asserted only that shares were "issued to Sweetsun Intertrade Inc [sic] in error" and a November 25, 2013 MYEcheck letter to Alpine Securities alleged that MYEcheck shares had been issued "without consideration." [*See* Exhibits "1" and "2" to Exhibit "A" hereto (November 13, 2013 letter to Alpine Securities and November 25, 2013 letter to Alpine Securities)]. They did not allege that the issuances were fraudulently induced.

Nevertheless, SCA learned sometime in November, 2013 that Plaintiff was raising concerns about the issuance of MYEcheck stock to Sweetsun, causing SCA and others to voluntarily restrain further transactions in Plaintiff's shares to allow Plaintiff to pursue a judicial order restricting sale of the MYEcheck stock. [*See* Exhibit "A" hereto at ¶¶'s 10-12; Exhibit "3" to Exhibit "A" hereto (January 16, 2014 e-mail from Mike Cruz to Ed Starrs)]. The Complaint concedes that SCA "did freeze trading MYEC's shares for some period of time," but alleges SCA sent Plaintiff an e-mail on January 16, 2014 stating that it "could not continue a freeze in trading in the shares in MYEC without a Court-issued temporary restraining order." [Complaint at ¶ 24]. In fact, in the January 16, 2014 e-mail referenced in the Complaint, SCA advised Plaintiff that Plaintiff's prior demands to Alpine Securities had resulted in MYEcheck shares being restricted for approximately 7 weeks, "which time is far greater than required by law under these circumstances," and that SCA understood "Alpine Securities advised you to obtain a temporary restraining order." [Exhibit "3 at 1" to Exhibit "A" hereto]. As admitted in paragraph 24 of the Complaint, SCA reiterated that same instruction. [*See id.*]

Plaintiff MYEcheck was well aware by January 16, 2014 that it needed to obtain a temporary restraining order to further restrict sales of the MYEcheck shares. [*See id.*] The following day, SCA contacted Thomas Russell, Plaintiff's attorney who had issued the prior legal opinions confirming the marketability of MYEcheck stock that had been issued at Sweetsun's direction. [*See* Exhibit "A" hereto at ¶ 15; Exhibit "4" to Exhibit "A" hereto]. Rather than supporting Plaintiff's allegations about the MYEcheck stock, Mr. Russell

5

responded, "[w]e feel the documentation that we relied upon to issue our opinion is accurate and complete." [Exhibit "4"to Exhibit "A" hereto (January 21, 2014 Russell Email)].

Despite the warnings it received that it must take proactive, judicial steps to stop any further sales of MYEcheck stock, Plaintiff failed to do so. It took no legal action to address its allegations against Sweetsun and restrict any additional sales of its stock until it filed this action on December 11, 2014, almost a year later. Since January 15, 2014, the remaining MYEcheck stock deposited with SCA has been sold into the marketplace and no MYEcheck stock remains on deposit at SCA. [*See* Exhibit "A" at ¶ 17]. Accordingly, when this case was filed SCA no longer had any involvement with or ability to impact any sale or transfer of the MYEcheck stock at issue. And, the Complaint acknowledges that the large majority of the MYEcheck stock it issued on Sweetsun's direction has been sold to third parties. It seeks injunctive relief only against further sales of some 530,005,000 shares out of the over 1.4 billion shares issued per Sweetsun's directives, and does not allege specifically that SCA holds any such stock on behalf of clients or otherwise. [Complaint at ¶¶'s 28, 41-44].

While the stock at issue is derivative of certificates that had been deposited with SCA, SCA is unable to say who now owns the shares, as the stock was sold into the marketplace. [*See* Exhibit "A" at ¶ 18]. Based on industry practice, it is likely that many shares sold so long ago have been sold one or more additional times since. [*See id.* at ¶ 19].

**II.    Plaintiff's Two Claims Against SCA Are Non-justiciable For Multiple, Related Reasons Because Any MYEcheck Shares Whose Certificates Were On Deposit With SCA Were Transferred Before The Plaintiff Filed Its Claims.**

The stock shares whose certificates were temporarily deposited with SCA were all transferred before this action was even filed. The Plaintiff's claims for declaratory relief and injunctive relief against SCA therefore fail to meet the "case or controversy" prerequisites of U.S. Const., Article III because: 1) the harm claimed by the Plaintiff cannot be redressed by any declaration or injunction against SCA; 2) the Plaintiff's claims against SCA are moot; 3) it is impossible for the Court to afford the relief Plaintiff seeks through any judgment against SCA; and 4) the Plaintiff is guilty of laches.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
Telephone 602-812-7979
Facsimile 602-595-7800

### A. Article III Standards

To proceed, a case must present a controversy that is justiciable. *See NAACP, Western Region v. Richmond*, 743 F.2d 1346, 1350 (9th Cir. 1984). "Justiciability" is limited by several doctrines relevant here, including lack of redressability, impossibility of relief, and mootness, all of which are interrelated considerations under the "case or controversy" prerequisite of U.S. Const., Article III. *See Allen v. Wright,* 468 U.S. 737 (1984). "Article III of the Constitution confines the federal courts to adjudicating actual cases and controversies." *Allen,* 468 U.S. at 750 (internal quotation marks omitted); *NAACP, Western Region*, 743 F.2d at 1350; *see also. Hall* v. *Beals,* 396 U.S. 45, 48 (1969) *(per curiam)*; *Preiser* v. *Newkirk,* 422 U.S. 395, 401 (1975); *Steffel* v. *Thompson,* 415 U.S. 452, 459, n. 10 (1974). If a plaintiff's claims do not meet the requisite redressability standards, if a plaintiff seeks relief that is impossible, if a plaintiff's claims are moot, or if a plaintiff otherwise lacks standing, the claims present no constitutionally sufficient "case or controversy" and this Court has no jurisdiction to resolve the claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"); *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 74-75, and n. 20 (1978) (plaintiff must show "substantial likelihood" that relief requested will redress the injury to satisfy the standing requirement); *United States* v. *Alaska S. S. Co.,* 253 U.S. 113 (1920) (a moot question may not be decided).

#### 1. Lack of "Redressability" - Plaintiff's Alleged Injury Cannot be Redressed by Relief Against SCA.

A plaintiff invoking federal jurisdiction must prove that it has standing for each claim alleged and each form of relief sought. *Lujan*, 504 U.S. at 561; *DaimlerChrysler Corp. v. Cuno*, 547 U. S. 332 (2006). The "standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen,* 468 U.S. at 752 (internal quotation

7

marks omitted). "To establish standing, a plaintiff must also show that a favorable decision will likely redress his injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (citing *Lujan*, 504 U.S. 555 at 560); *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009); *see Gonzales v. Gorsuch,* 688 F.2d 1263 (9th Cir. 1982) ("It is a prerequisite of justiciability under Article III that judicial relief will prevent or redress the claimed injury, or that there is a significant likelihood of such redress."); *see also Lujan*, 504 U.S. at 560-561 (emphasis added) (to demonstrate Article III standing, plaintiff must prove that it suffered a concrete and particularized and actual or imminent injury in fact; the injury is "fairly traceable to the challenged action of the defendant" and not "the result of the independent action of some third party not before the court"; and "***it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision***." (emphasis added); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *NAACP, Western Region*, 743 F.2d at 1350.  Additionally, because the Plaintiff here seeks "declaratory and injunctive relief" it must also demonstrate that it is "realistically threatened by a repetition of the violation." *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006) (internal quotation marks omitted); *see Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) ("In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a 'concrete and particularized' legal harm, [citation omitted], coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Because the Plaintiff must show "that it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision," *Lujan*, 504 U.S. at 561; *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1107 (E.D. Cal. 2002), declaratory relief where the defendant cannot take action to remedy the Plaintiff's claimed harm would not redress the harm and is nonjusticiable, *see Mayfield*, 599 F.3d at 971.  Also, where it is unlikely that the declaratory relief sought against a particular defendant will result in the plaintiff obtaining the particular benefits or changes it seeks, the claim is nonjusticiable. *See Coakley v. Sunn*,

8

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
Telephone 602-812-7979
Facsimile 602-595-7800

895 F.2d 604, 606 (9th Cir. 1990) (explaining that standing requires that the injury alleged is "apt to be redressed by a remedy that the court is prepared to give"). Moreover, claims asserting harms that can only be redressed through "the unfettered choices made by independent actors not before the court" must be dismissed as nonjusticiable on redressability grounds. *See Lujan,* 504 U.S. at 562; *Norton* 216 F. Supp. 2d at 1107-1108.

Here, Plaintiff first asks the Court to enter a declaration against SCA that certain shares in MYEcheck stock are void and cancelled. Plaintiff apparently contends it has been harmed by parting with shares of stock that never should have been issued and desires to eliminate claims by any parties who acquired shares that they actually own any valid stock in MYEcheck. But, there is no substantial likelihood that the declaration against SCA will require SCA to take any action or behave in any way that will redress MYEcheck's alleged harms or obtain any of the relief Plaintiff desires. SCA does not own, possess or have any input into the ongoing sales of any of the MYEcheck shares. SCA cannot itself cancel any of the relevant shares of stock, or force their return to MYEcheck. Nor can SCA impact or restrict the sale of shares it does not possess. Thus, the declaration would not compel SCA to do anything at all that would help MYEcheck remedy the alleged improper issuance of its stock or the transfer of the stock to any future purchasers.[3] The declaratory relief against SCA would simply not redress Plaintiff MYEcheck's alleged harms or result in MYEcheck obtaining any relief or benefits. The declaratory relief claim against SCA is therefore nonjusticiable.

The same goes for Plaintiff's request for an injunction against SCA. The injunction claim asks the Court to prohibit SCA from allowing future transfers of the MYEcheck stock.

---

[3] As to the shares that were issued to holders from MYEcheck at Sweetsun's direction, it is doubtful that declaratory relief against *any* of the defendants would provide the share cancellation relief Plaintiff is looking for. After all, Plaintiff's Complaint even admits at paragraph 43 that "a transfer to innocent third parties could result in plaintiff losing the ability to cancel those shares." And, those third party purchasers or transferees of shares are not even parties. The declaration in this case would not cancel any interest they have. The interests of these non-parties are further addressed in the Rule 19 discussion of this motion.

9

As SCA had no ownership, custody, possession of or influence over MYEcheck stock at the time the Complaint was filed, and has not acquired any such interest or ability since then, the injunction against SCA would be meaningless and ineffective to protect MYEcheck from any future sale or transfer of its stock.  Therefore, the Third Cause of Action for injunctive relief against SCA would not redress any claimed harms and presents a nonjusticiable claim.  The Court must dismiss the injunction claim for its failure to meet the "case of controversy" requirements of U.S.Const., Art. III.

Finally, nothing in the Complaint meets the further requirement that, for declaratory and injunctive relief, the Plaintiff must establish a "sufficient likelihood that [it] will again be wronged in a similar way," *City of Los Angeles*, 461 U.S. at 111, and that it is "realistically threatened by a repetition of the violation," *Gest,* 443 F.3d at 1181.  Because SCA has no ongoing involvement with the shares at issue here, there is simply no credible claim that Plaintiff is somehow currently threatened by any transfers or sales of the shares at issue here through SCA.  The declaratory and injunction claims must be dismissed.

### 2.     Plaintiff's Claims Against SCA are Moot.

Closely tied to the redressability issue is the mootness doctrine under U.S. Const., Art. III.   A claim that is or becomes moot is also non-justiciable. *See Defazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045 (E.D. Cal. 2009) (citing *Jacobs v. Clark County Sch. Dist.,* 526 F.3d 419, 425 (9th Cir. 2008).  And, "[a] case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Alder Creek Water Co.,* 823 F.2d 343, 345 (9th Cir. 1987).  Here, events occurring before the Complaint was even filed, namely the transfer of all MYEcheck shares on deposit with SCA, have deprived the Court of the ability to redress the Plaintiff's claimed injuries by any relief directed at SCA.[4]   The Court can simply not stop a transfer by SCA of shares it does

---

[4]     Relief that amounts to "advisory opinions on abstract propositions of law" is improper. *Hall* v. *Beals,* 396 U.S. 45, 48 (1969) *(per curiam)*; *see also Preiser* v. *Newkirk,* 422 U.S. 395, 401 (1975); *Steffel* v. *Thompson,* 415 U.S. 452, 459, n. 10 (1974)). As SCA has no involvement with any of the

10
MOTION TO DISMISS (2:14-cv-02889-KJM-AC)

not have access to.

Moreover, "[a]s in any other lawsuit, a declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action." *Koenig v. Southeast Community College*, 438 N.W.2d 791, 794-795 (Neb. 1989). Here, SCA lacks any legally cognizable interest in the MYEcheck shares – the only ones that SCA clients had ever deposited with SCA were transferred before the Complaint was ever filed. Any declaration about the validity or cancellation of the MYEcheck shares would be purely advisory and meaningless as to SCA. Therefore, the declaratory relief and injunctive relief claims against SCA are moot.

### 3. The Plaintiff Seeks Impossible, and Therefore, Non-Justiciable, Relief.

In yet another closely related doctrine, it is well established that declaratory and injunctive relief that amounts to advisory rulings that a defendant cannot now comply with are barred as requiring impossible performance. As the U.S. Supreme Court has long noted, "[t]o adjudicate a cause which no longer exists is a proceeding which this Court uniformly has declined to entertain." *Oil, Chemical & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 371 (1960); *see Koenig*, 438 N.W.2d at 794-795 (rejecting relief claim because "[a]t this stage of the litigation, judicial enforcement of any decree attempting to eliminate the reallocations, renovations, installations, expenditures, and transfer would be impossible."); *see also Water Works & Sewer Bd. of Birmingham v. Petitioners Alliance*, 824 So. 2d 705, 707-708 (Ala. 2001). Thus, where a city's water and sewer system had already been transferred pursuant to an election of the city's voters and execution of a transfer agreement, the court refused to entertain an impossible claim seeking to enjoin the election and for a declaratory judgment challenging the validity of a petition and ordinance

---

MYEcheck shares, declarations as to the validity or cancellation of such shares would be purely advisory and abstract as far as SCA is involved.

11

underlying the election. *Water Works & Sewer Bd. of Birmingham*, 824 So. 2d at 707-08. "This court will not render a purely advisory opinion nor decide moot questions under the guise of a declaratory judgment." *Id.*

The decision in *600 California Corp. v. Harjean Co.*, 284 F. Supp. 843, 860-61 (N.D. Tex. 1968) is particularly instructive. There, a few disgruntled shareholders sought to delay or stop through multiple injunctive suits the combination of two corporations that had been approved by the relevant corporate board of directors, a majority of shareholders, and relevant government authorities. The district court noted that the plaintiffs' attempts to disrupt the merger "became impossible from the standpoint of these disgruntled stockholders following the issuance by the California Corporation Commission of the permit to" one of the corporations because to "accomplish a return to the *status quo* as it existed just prior to the issuance of the permit would require [among other things] . . . the recall of the Tenneco convertible preference shares issued to individual shareholders in exchange for their Kern stock regardless of who might now own those shares." *Id.* The court noted that another court "could not compel those things to be done even by granting [a plaintiff's] request that the accused corporate officers and attorneys be thrown in the pokey . . . and required to stay there and gaze out upon a striped moon and listen to coyote music until they brought about the return to the *status quo*." Instead, the action was "futile because the closing of the reorganization plan is beyond recall." *Id.*

Just as in *600 California Corp.*, any relief requested against SCA is futile because the transfers of the MYEcheck shares that were deposited with SCA are long over and beyond recall. Instead, the Court must respect the fact that transfers were made before any Complaint was filed, non-parties now own the stock shares, and any action against SCA simply cannot change that. As it is impossible, and therefore futile, to attempt to force through a judgment against SCA the share cancellation and sale restriction Plaintiff wants, the claims against SCA are impossible and non-justiciable.

///

12

### 4. Plaintiff Lacks Standing Under the Federal Uniform Declaratory Judgment Act.

The ability of a party to request a declaratory judgment by this Court hinges on there being an "actual controversy." 28 U.S.C. § 2201(a) (the federal Declaratory Judgments Act). Without an actual controversy that is substantial and concrete, a party has no standing to sue under the federal Declaratory Judgments Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). "A 'controversy' must be one that is appropriate for judicial determination….The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 241. "It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* In short, it must be a justiciable controversy. Because the declaratory relief claim here is non-justiciable for multiple reasons, the Plaintiff has no standing, and the Court has no jurisdiction, to entertain a claim under the Declaratory Judgments Act.

### B. Plaintiff's Claims are Barred by Laches

In addition to the multiple justiciability problems with Plaintiff's claims, the claims against SCA are also barred by the doctrine of laches. Laches is a viable defense under federal law, *see Apache Survival Coal. v. U.S.*, 21 F.3d 895, 905 (9th Cir. 1994), which requires the defendant to show (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. The facts outline above clearly display both.

First, Plaintiff's Complaint, and the facts supplemented hereby through SCA's submissions, suggest there was no justification for Plaintiff to wait until after all shares deposited with SCA were transferred before filing suit. Plaintiff obviously knew by the beginning of 2014 that there were issued shares of MYEcheck on deposit by owners of such shares with SCA, that those SCA clients believed themselves to be owners of valid and marketable shares in MYEcheck, and that they intended to sell or transfer the shares. That is why Plaintiff made demands in late 2013 that further sales be stopped.

The record further discloses that Plaintiff was well aware it needed to sue and obtain injunctive relief if it was going to stop third parties from participating in the sale or transfer of such shares. Alpine Securities and SCA put Plaintiff on notice beginning in November 2013 that if Plaintiff wanted to restrict transfers of the MYEcheck shares any further it would need to file a lawsuit and obtain a temporary restraining order. Plaintiff's Complaint admits receiving this directive from SCA in January 2014. [Complaint at ¶ 24]. And, a January 16, 2014 e-mail from Plaintiff's CEO, Ed Starrs, to SCA stated: "Because of this company's limited resources, it is taking longer than expected to get the appropriate law suits filed, but make no mistake, the process is underway." [Exhibit "3 at 2" to Exhibit "A" hereto]. While it is unclear what part of "the process" may have been "underway", it is certain that it took almost 11 more months for Plaintiff to file this action on December 11, 2014. The Plaintiff knew that in the interim all shares on deposit by clients of SCA could be sold or transferred, and, in fact they were, leaving SCA no way to further restrict the shares.

Plaintiff's Complaint offers no facts that would make its delay in filing suit excusable. Instead, the facts show the Plaintiff sat on its purported rights and claims for almost 11 months knowing that every day more shares could be transferred to "innocent third parties" who Plaintiff would have no rights against. [*See* Complaint at ¶ 43]. Plaintiff knew and accepted the risk that the passage of time without legal action would make obtaining any help through SCA to restrict stock transfers impossible. Its delay in filing suit under those circumstances is inexcusable.

SCA would be highly prejudiced by having to defend itself now. SCA simply has no "dog in the fight." Plaintiff does not allege that SCA somehow participated in any fraud. Rather, SCA operated as a legitimate servicing agent assisting parties who held shares that Plaintiff's attorney's legal opinion indicated were validly issued, marketable securities, to confirm the marketability of those shares under applicable federal rules. SCA cannot be liable for any damages to Plaintiff, and Plaintiff makes no claims for damages against SCA. Now, having acted innocently on all counts, SCA is being asked to defend against claims

14

that are moot, impossible to implement by SCA, and provide no relief at all the Plaintiff even if successful.  The expense and resource demand that actively litigating such claims would place on SCA is large and highly prejudicial to both its finances and the ability of its agents to complete work for other clients needed to continue the business of SCA.

Given the unassailable showings of inexcusable delay by Plaintiff and undue prejudice to SCA, the Court must find that SCA has established that the claims against it are barred as a matter of law by laches.

### III. Plaintiff's Claims Must Be Dismissed For A Failure To Join Indispensable Parties.

As noted above, many of the shares of MYEcheck at issue here have been transferred to non-parties who now undoubtedly believe they are the owners of validly issued shares of MYEcheck stock.  It appears from the Complaint that as many as 909,995,000 of the shares at issue have been transferred to non-parties.  [*Compare* Complaint ¶¶'s 15, 17, 32 (showing 1,440,000,000 shares issued *with* Complaint ¶¶'s 28, 42-44 (seeking injunction against further transfer of only 530,005,000 shares)].  Yet, the Plaintiff seeks a judicial declaration that all such shares are void from their inception and should be cancelled.  [*See* Complaint at ¶ 32].  The non-parties now owning the shares Plaintiff attacks as void are necessary and indispensable parties; and the Plaintiff's failure to join them justifies dismissal under Fed. R. Civ. P. 19(a)(1).

It is appropriate for the Court to grant a Rule 12(b)(7) motion to dismiss for failure to join parties required under Rule 19 if the court determines that joinder would destroy jurisdiction and the non-joined party is necessary and indispensable. *Shermoen v. U.S.,* 982 F.2d 1312, 1317-18 (9th Cir. 1992).  Here, jurisdiction is based solely on diversity of citizenship.  If any of the non-party shareholders is a citizen of California, like the Plaintiff, complete diversity is destroyed and the Court will lose jurisdiction.  Also, if any of them is a foreign party not subject to service of process, the Court would not be able to sustain jurisdiction over them.  Alternatively, if joinder is feasible without destroying the Court's

15

1 jurisdiction, the Court must consider a Rule 12(b)(7) motion to be a motion to compel joinder of the absent parties. *See Cunningham v. Municipality of Metro. Seattle,* 751 F.Supp. 885, 896 (W.D. Wa. 1992).

The only remaining question is whether the non-party shareholders should be considered necessary and/or indispensable parties under Rule 19. Rule 19 identifies three separate categories of persons who must be considered necessary parties. The two relevant here are: 1) persons in whose absence complete relief cannot be accorded among those already parties; and 2) persons who claim an interest relating to the subject of the action and are so situated that the disposition of the action in the party's absence may as a practical matter impair or impede the person's ability to protect that interest. Rule 19(a), Fed.R.Civ.P.

The Plaintiff seeks a declaration that all shares of MYEcheck issued at the direction of Sweetsun are void from their inception and should be cancelled. However, it is impossible for the Plaintiff to actually obtain relief that voids all shares and obtains their cancellation unless all persons owning such shares are joined. The current defendants are allegedly the owners of only a minority of the relevant shares. It would hardly be constitutional for the Court to attempt to actually invalidate share interests owned by non-parties who are given no opportunity to defend their property rights. Thus, complete relief is not possible without joinder of the non-party share owners.

A decision in the absence of such non-parties is also, however, likely to impair or impede such person's abilities to protect their interests. The decision in *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 673 (6th Cir. 2004) surveyed historical decisions on whether non-party shareholders are necessary parties to actions in which their shares could be invalidated if the plaintiff prevails. The court noted that the older decisions "help to demonstrate the pattern of the courts' unwillingness to proceed in the absence of shareholders whose shares will be invalidated by the action." *Id.* (citing *Tucker v. Nat'l Linen Serv. Corp.*, 200 F.2d 858, 863 (5th Cir. 1953)(ruling that a shareholder is an indispensable party to an action that

16

attempts to void his shares); *Steinway v. Majestic Amusement Co.*, 179 F.2d 681, 684 (10th Cir. 1949, *cert den.* 339 U.S. 947 (1950)(same).  Ninth Circuit law adopts this same perspective that non-party shareholders deserve to be treated as necessary parties whose rights might be impaired in the absence of their joinder. *See Klaus v. Hi-Shear Corp.*, 528 F.2d 225, 234 (9th Cir. 1975).

The reasons for the foregoing are obvious.  If the Plaintiff gets what it asks for – a declaratory judgment that all shares issued at Sweetsun's direction are void and should be cancelled – it is natural to assume that Plaintiff will deny the non-party shareholders have any enforceable share interests in MYEcheck.  They will likely deny such shareholder any voting or other rights associated with such interests.  Even more harmful will be the negative market impact any such judgment will have on such non-parties shares.  These securities are already lightly traded within limited markets of interested investors.  Should Plaintiff MYEcheck announce to the world some judgment declaring that all shares issued on direction of Sweetsun are void and cancellable, it may be next to impossible for the non-parties to sell their shares.  Thus, their non-joinder here will practically impair their rights to defend their interests and unfairly prejudice them.  The non-parties are necessary parties under Rule 19.

Thus, the Court should enter an order that all non-party owners of any of the shares of MYEcheck issued on the direction of Sweetsun are necessary parties who must be joined if feasible under Rule 19(a), Fed.R.Civ.P.  And, it must further direct that should the joinder of some of those non-parties prove not to be feasible, they are indispensable parties whose lack of joinder justifies dismissal of the Plaintiff's claims against SCA under Rule 19(b), Fed.R.Civ.P.

## IV. Conclusion

Plaintiff stood idly by while it allowed SCA and others to hold and transfer potentially fraudulently issued shares. Now, after over one year, Plaintiff requests that this Court cancel shares owned by unknown innocent purchasers, and that this Court restrain

17

SCA from transferring shares it no longer holds. For these reasons and because Plaintiff's claims against SCA are nonjusticiable, the Court must dismiss any claims against SCA.

Dated this 1st day of June, 2015.

                                    BASKIN RICHARDS PLC

                                    /s/  Alan Baskin
                                  Alan Baskin
                                  Leslie Ross
                                  2901 N. Central Avenue, Suite 1150
                                  Phoenix, Arizona 85012

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012
Telephone 602-812-7979
Facsimile 602-595-7800

18

MOTION TO DISMISS (2:14-cv-02889-KJM-AC)