EXHIBIT A

## DECLARATION OF D. MICHAEL CRUZ

I, D. MICHAEL CRUZ, declare as follows:

      1.      I am legal counsel for Scottsdale Capital Advisors ("SCA") and make this declaration based upon my personal knowledge regarding the allegations found in Plaintiff MYEcheck's Opposition to Motion to Dismiss and Plaintiff's Request for Leave to Amend Complaint, and the Declaration of Brian R. Katz in Opposition to Motion to Dismiss. I am competent to testify as to the matters stated herein.

      2.      On February 6, 2015, I sent Mr. Katz an email with a number of attachments.  A true and correct copy of the email correspondence between me and Mr. Katz on February 6, 2015 is attached as Exhibit 1.

      3.      The attachments to my February 6, 2015 email included, among other things, the July 31, 2013 and December 16, 2013 letters from Thomas Russell referenced in Mr. Katz's declaration. Exhibit 1 at pages 13-16 and 9-10 respectively.

      4.      On February 6, 2015, I received a confirmation email from Mr. Katz thanking me for providing the documents and stating that he would "review them and discuss them with [his] client." A true and correct copy of the email correspondence from Mr. Katz on February 6, 2015 is attached as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of July, 2015.

By /s/ D. Michael Cruz (original signature
retained by attorney Alan Baskin)
D. Michael Cruz

EXHIBIT 1

**Mike Cruz**

---

| | |
|---|---|
| **From:** | Mike Cruz <dmichael@scottsdalecapital.com> |
| **Sent:** | Friday, February 06, 2015 4:18 PM |
| **To:** | 'BRIAN KATZ' |
| **Subject:** | RE: My Echeck Complaint CV02889-KJM-AC |
| **Attachments:** | 3rd P (Tangiers) Verification letter.pdf; Tangiers Consideration Statement.pdf; Signature page from account information.pdf; Signature page from DD packet.pdf; Proof of Payment (Sweetsun).pdf; 2d Opinion fm Gary Wykidal.pdf; MYECheck Attorney Opinion debt Sweetsun 7-31-2013. Signed.pdf; Issuer (MYEC) Certification re Sweetsun 10 01 13.pdf |

Attached are some of the documents we obtained and reviewed during the deposit due diligence process and after the time we received notice of the adverse claim by MYEC.  These documents, which include representations and statements from MYEC, MYEC's counsel and the original noteholder, Tangiers, evidence the parties entered into the transactions at issue with full knowledge of the terms and conditions and were made with MYEC's knowledge and authorization.  We have other documents and communications, including representations from the transfer agent, evidencing a business transaction negotiated in good faith by all the parties at issue.

At the time of the original demand made by Mr. Starrs, he asserted the shares were issued without authorization and created using fraudulent documents.   These generality of the unsupported statements pale in contrast to the transaction documentation and transaction history as the deposit and sales occurred  over an approximate one year period.

I provided you these documents in good faith.  I request you confirm in writing that we have an appropriate extension of time in which to file a response while we work to resolve this matter with respect to SCA.

Regards,

Mike Cruz


*D. Michael Cruz*
LEGAL COUNSEL


## Scottsdale Capital Advisors

Member  FINRA & SIPC

7170 E McDonald Road, Suite 6
Scottsdale, AZ 85253
*(480) 603-4929 Direct*
*(480) 603-4901 Fax*
dmichael@scottsdalecapital.com *Email*


This e-mail and any of the attached documents is the property of Scottsdale Capital Advisors. It is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, you may not read, copy, distribute or use this information.  If you have received this e-mail in error, please immediately notify the sender by reply e-mail and delete the message.

---

**From:** BRIAN KATZ [mailto:bkatzlaw@gmail.com]
**Sent:** Friday, February 06, 2015 1:57 PM
**To:** Mike Cruz

**Cc:** BRIAN KATZ
**Subject:** Re: My Echeck Complaint CV02889-KJM-AC

Mr. Cruz,

Thank you for your e-mail.

I was informed that SCA had restricted the account for a period of time, but then stated it could not continue to block it without a court order.

> You advise that SCA no longer holds any MYEC Securities for any account, and that the Sweetsun account is no longer active.

> You also state that SCA has substantial due diligence on the transactions in question that justify the action taken.

If it would be possible for me to verify the above statements, I would be in a position to recommend that my Ciient dismiss the lawsuit against SCA.

Are there documents that you can provide me that would verify these statements?

Thank you,

Brian

**BRIAN R. KATZ**
**Attorney at Law**
**4364 Town Center Blvd., Suite 207**
**El Dorado Hills, California  95762**

**916-933-5266**
**916-933-7866 (Facsimile)**

# *Tangiers Investors LP*

## 200,6371 BUSINESS BOULEVARD
## SARASOTA FL
## 34240

**www.tangiersinvstllp.com**

OTC Securities Deposit

**Third Party Affiliate and Authorization Verification**
(Corporation)

To:   **Scottsdale Capital Advisors**
      7170 E. McDonald Dr., Ste. 6
      Scottsdale, AZ 85283
      Fax 480-603-4901 Tel 480-603-4900

In connection with the sale of $3,000.00 of debt owed to Tangiers Investors, LP by MyECheck, Inc., pursuant to a convertible promissory note issued on June 6, 2009 in the principal amount of $32,200.00 (the "Note"), to Sweetsun Intertrade, Inc. (the "Purchaser"), which portion of the Note the Purchaser converted into 300,000,000 shares of the issuers common stock (the "Securities"), pursuant to the terms and conditions of the Note, I, the undersigned Michael Sobeck of Tangiers Investors, LP, a Limited Partnership (the "Company") organized under the laws of  Delaware, hereby represent and certify to Scottsdale Capital Advisors that:

1.  Company has its principal place of business in Sarasota Florida.

2.  Attached hereto is a true and correct list of the officers and directors, members and managers, and partners (both limited and general) of the Company (each an "Associated Person"). If any of the partners is an entity please also disclose the requested information for that entity.

3.  Neither Company nor any of its Associated Persons was an officer, director, affiliate, control person or beneficial owner of 10% or more of any class of equity securities of the issuer at the time of, or 90 days prior to, the sale of the shares to Purchaser.

4.  Company sold the Securities to Purchaser in a private sale not involving an issuer, dealer, or underwriter.

5.  There is no agreement or other arrangement between Company and issuer of the Securities to remit any portion of the proceeds from sale of the Securities to the issuer.

6.  There is no agreement or other arrangement between Company and the Purchaser to remit any portion of the proceeds from future sales of the Securities to the Company.

7.  Number of shares of the Issuer owned or controlled, directly or indirectly, by Company (including any shares held by any

(sca 12-2009)

8.   relative/spouse living in the same household): _____ none _____

By: Michael Sobeck
Tangiers Investors , LP

*Consideration Statement*
*3 P.*

# Tangiers Investors LP

200,6371 BUSINESS BOULEVARD
SARASOTA FL
34240

www.tangiersinvstlp.com

September 18, 2013

To whom it may concern,

Tangiers Investors, LP did not and does not have a brokerage account and we could not do the conversion ourselves. When we entered into negotiations with Sweetsun Intertrade, Inc. concerning the first purchase we came to an agreement that they would purchase more debt from us as time went on. We decided on face value prices because we had not been able to collect directly from MyEcheck and getting the full value back seemed more than adequate

_____

By: Michael Sobeck
Tangiers Investors , LP



# TANGIERS
## CAPITAL, LLC

402 W. Broadway Ste. 400   San Diego, CA 92101   Phone - 619.615.4255 fax - 619.566.2011
www.tangierscapital.com

Scottsdale Capital Advisors
Attn: Michelle Aarnes
2782 Gateway Road
Carlsbad, CA 92009

March 30, 2010

RE: CHANGES IN AUTHORIZED AGENTS FOR ACCOUNT # 07-57396855

Please remove Edward M Liceaga and Justin Ederle off of our account and add
Robert Papiri per the information on the new account documentation.

Sincerely,

Michael Sobeck
Managing Member of Tangiers Capital, LLC
The General Partner for Tangiers Investors, LP
Phone: 619.615.4255
Fax: 619.566.2011
www.tangierscapital.com



Home | Log In

# Welcome to
Tangiers Capital LLC

Tangiers Capital, LLC is a Southern California based asset manager that raises, invests, and manages alternative investment funds. The objective of Tangiers Capital, LLC is to provide the best possible risk-return trade-off by making direct investments into foreign and domestic private and public small and micro-cap companies. This is done through the acquisition of stock, convertible debt, warrants, and other instruments from target companies at an appropriate discount. Tangiers Capital, LLC will play a significant role in the formation of liquidity events for its private investments, assisting companies in the alternative public offering market through a variety of services. Tangiers Capital, LLC has established a network of world-wide deal sources and is positioned to capitalize on the growing number of opportunities outside of the United States. All investments are designed to maximize upside opportunity for our fund investors while limiting downside risk through the use of collateralization and hedging strategies

**FOR ACCESS TO THE TANGIERS CAPITAL, LLC WEBSITE, PLEASE SIGN UP AS A NEW MEMBER VIA THE LINK TO THE RIGHT, A REPRESENTATIVE WILL REVIEW AND APPROVE ALL QUALIFYING USERS.**

**TO CONTACT US DIRECTLY, PLEASE EMAIL INFO@TANGIERSCAPITAL.COM**

- INVESTMENT PHILOSOPHY
- MEET THE TEAM
- FUND STRUCTURE
- PERFORMANCE
- MARKETING MATERIALS
- TANGIERS CAPITAL NEWS
- LEGAL DOCUMENTS
- CONTACT US

## MEMBER LOGIN

User Name

Password

New Member Sign Up Here

Copyright ©2013 ;:: TANGIERS CAPITAL, LLC   : All Rights reserved. Website by HedgeCo Websites | Legal Disclaimer

Tangiers Investors, LP

Date:September 10, 2012

_____
By:  authorize signatory

Date: September 10, 2012

_____
Authorized signatory

BEAT HAEFLIGER

# Law Office of Thomas Russell

3700 Campus Drive
Suite 204
Newport Beach CA 92660

December 16, 2013

(949) 743-0161
tot@tor-law.com

To whom it may concerned,

Enclosed is a check for Tangiers Investors LPC to cover  for Sweetsun Intertrade Inc assignments on my E Check.

September 10, 2012 - $2,600

April 30, 2013 - $3,500

July 26, 2013 –  $3,000

Totaling - $9,100.00

Thank you!

THOMAS O RUSSELL A PROF. LAW CORP
CLIENT TRUST ACCOUNT
3700 CAMPUS DRIVE STE 204
NEWPORT BEACH, CA 92660-2603

1093

90-4284/1222

DATE December 16, 2013

PAY TO THE
ORDER OF   Farsico's Invito LPC                    $ 9,800.00

Nine Thousand Six Hundred and 00/100                              DOLLARS

BANK WEST
Newport Beach Office
4100 VON KARMAN BLVD
NEWPORT BEACH, CA 92660
1-866-446-2265

FOR   Client Costa   Swetton Institute Inc. MVECheck 9/16/12
Arizona B 4/30/13   7/24/13

⑆REDACTED⑆   6139⑈

⑈001093⑈

LAW OFFICES OF

# GARY C. WYKIDAL & ASSOCIATES

GARY C. WYKIDAL

245 FISCHER AVENUE, SUITE A-1
COSTA MESA, CALIFORNIA 92626-4553
P: (714) 751-8505  F:  (714) 751-5428

gcwlaw@sbcglobal.net

of Counsel

JULIE A. DUNCAN

Website:   www.wykidal.com

January 22, 2014

Sent via email
BeatHafliger@gmail.com

Beat Hafliger
Sweetsun Intertrade, Inc.

Dear Mr. Hafliger:

I have been asked to review the issuance of 252,561,125 shares of common stock of MyECheck that are held in the name of Sweetsun Intertrade, Inc. (the "Company"). I understand that MyECheck's CEO Ed Starrs has challenged the validity of the issuance of these shares. I am sending this letter for the purpose of clarifying and refuting Mr. Starrs claim or claims. In this regard, I have reviewed the following documents.

1.  The Consent and Resolution of the Board of Directors of MyECheck, Inc. dated September 18, 2012 which appears to bear the signature of Mr. Starrs. This Board of Directors Resolution consists of two pages and identifies the fact that on June 26, 2009 Tangier Investors, LP (Tangiers) assigned a convertible promissory note to the Company. Tangier assigned to the Company 260,000,000 (Two Hundred Sixty Million) shares of MyECheck for the amount of $2,600.

2.  The Consent and Resolution of the Board of Directors of MyECheck, Inc. dated September 18, 2012 which appears to bear the signature of Mr. Starrs. This Board of Directors Resolution consists of two pages and identifies the fact that on April 30, 2012 Tangier Investors, LP (Tangiers) assigned a convertible promissory note to the Company. Tangier assigned to the Company 350,000,000 (Thee Hundred Fifty Million) shares of MyECheck for the amount of $3,500.

3.  The Consent and Resolution of the Board of Directors of MyECheck, Inc. dated September 18, 2012 which appears to bear the signature of Mr. Starrs. This Board of Directors Resolution consists of two pages and identifies the fact that on July 31, 2013 Tangier Investors, LP (Tangiers) assigned a convertible promissory note to the Company. Tangier assigned to the Company 300,000,000 (Three Hundred Million) shares of MyECheck for the amount of $3,000.

Beat Hafliger
Sweetsun Intertrade, Inc.
January 22, 2014
Page 2

4. An Opinion Letter of counsel Thomas Russell dated July 31, 2013 opining on the assignment of 300,000,000 shares of Common Stock of MyECheck from Tangiers to the Company for $3,000.

5. An Opinion Letter of counsel Thomas Russell dated May 6, 2013 opining on the assignment of 350,000,000 shares of Common Stock of MyECheck from Tangiers to the Company for $3,500.

6. An Opinion Letter of counsel Thomas Russell dated December 17, 2012 opining on the assignment of 260,000,000 shares of Common stock of MyECheck from Tangiers to the Company for $2,600.

7. An email letter from Signature Stock Transfer, Inc. dated January 14, 2014, addressed to Alpine Securities stating that there were no stops or restrictions against MyECheck shares held by Alpine (ALPCO) regarding 252,561,125 of said shares.

Based on my review of the aforesaid documents and assuming the authenticity of Mr. Starr's signature and further assuming that he had the legal right to execute the aforesaid resolutions without further corporate authorization, it appears clear that any claim that the shares identified herein were not validly issued to the Company, is simply not supported by any objective or contrary evidence.

If you have any further questions certainly feel free to call.

Very truly yours,

Gary C. Wykidal

GCW/ss

**LAW OFFICE OF THOMAS RUSSELL**
**3700 CAMPUS DRIVE, SUITE 204**
**NEWPORT BEACH, CA 92660**
**(949)743-0161**
**tom@cllfirm.com**

July 31, 2013

Signature Stock Transfer, Inc.
2632 Coachlight Ct.
Plano Texas, 75093

I have acted as counsel to MYECHECK, Inc., a Wyoming Corporation (the "Company") in connection with the matters addressed herein. In connection with such representation, I have reviewed and examined a copy of the Promissory Note evidencing an obligation in the principal sum of $32,200.00 dated June 26, 2009 (the " Original Note"), executed by Company based on loan in favor of Tangiers Investors LP. The Original Note was the subject to an Assignment Agreement described below, whereby a portion of the Note was sold to Sweetsun Intertrade Inc. (the "Assignee"). On July 26, 2013, Tangiers Investors LP executed a partial assignment interest in the Original Note, consisting of $3,000.00 of the principal amount of the Note, to Sweetsun Intertrade Inc. (the "Assignment").

In addition to the Original Note, I have also examined and relied upon the originals, or copies certified to my satisfaction, of such documents and other instruments as in my judgment is necessary or appropriate to enable me to render the opinions expressed below. These include, but are not limited to:

- A partial Assignment of the Note by Tangiers Investors LP to Sweetsun Intertrade Inc. (the "Assignment" and the "Assignee", respectively), dated July 26, 2013, which assigns the sum of $3,000.00 of the principal balance of the Note to the Assignee.
- Bank statement of the Company showing verification of funds deposited by Tangiers Investors LP as consideration for the Note.
- A Conversion Notice from the Assignee to the Company (the "Notice") whereby the Assignee elected to convert its interest in $3,000.00 of the principal balance of the Note into 300,000,000 shares of Common Stock of the Company
- Written Consent of the Company's Board of Directors dated July 30, 2013, (whereby the Company acknowledged that it had received a Demand for payment in full from the Assignee. Due to the fact that the Company did not elect to utilize its capital for payment, the Company and the Assignee agreed the interest of the Assignee in the Note could be converted into Common Stock of the Company as specified in the Note at a rate of $0.00001 per share).

As to any facts material to my opinion expressed herein, I have relied upon the representations and warranties of the officers of Company.

For purposes of rendering the opinions stated herein, I have assumed the following:

A.   The Company has duly and validly executed the Note to which it is a signatory, and the obligations set forth therein are the legal, valid and binding obligations of Company, enforceable by a holder thereof, and the Company had all necessary legal power and authority to execute and deliver the both the Original Note.

B.    The signatures on the Original Note, the, the, Assignment and the Notice are genuine.

C.    The Original Note, the Assignment and the Notice submitted to me, as signed by Company, Edward Stars and the Assignee, are true copies of the originals and all certificates and other documents concerning public records which were reviewed by me for the purpose of the opinions expressed herein are accurate and complete.

D.    The Note has not been amended, modified or supplemented by any written or oral agreement or understanding of the parties thereto nor has any waiver of any of the terms or conditions of the Note occurred with the exception of the assumption of the Note obligation by the Company.

E.    A portion of the Note was duly and legally assigned by Tangiers Investors LP to the Assignee in a valid, legally binding transaction.

F.    Pursuant to the Written Consent of the Company's Board of Directors pertaining to conversion of the Note, the Conversion of the Note is effectuated with a value of to $.00001 per share, and the parties have mutually assented to this conclusion, with the Assignee being entitled to its proportionate share thereof, i.e., 300,000,000 shares.

G.    As to questions of fact material to the opinions expressed herein. I have relied upon the statements and representations stated in all of the above-referenced documents and by the Company's officers.

H.    That all necessary consents, approvals, authorizations, registrations, declarations and filings and all other conditions precedent with respect to the legal and valid execution, delivery and performance of the Note have been made, obtained and satisfied, as the case may be, other than such consents, approvals, authorizations, registrations, declarations filings and conditions precedent required to be obtained, made or satisfied by the Company;

I.    No opinions are expressed herein with respect to (a) any laws other than those of the United States, Wyoming or California, and (b) the priority or perfection of any liens created pursuant to the Note.

Based upon such review, and subject to the assumptions, exceptions and qualifications set forth herein. I am of the opinion that:

1.    The obligations of the parties to the Note as stated therein are valid, lawfully entered into, and enforceable under the terms thereof of the Note. The Assignment of the Note by Tangiers Investors LP to the Assignee was both valid and legally binding transactions.

2.    As to the Company, it is a corporation duly incorporated and in good standing, has a legal corporate existence and is duly authorized to transact business under the state of Wyoming and Company has full corporate authority to executed, deliver and perform its obligations under the Note.

3.    As to the right of the Assignee to acquire Common Stock of Company pursuant to the Conversion of the Note (the "Conversion"):

(a)  The Company currently has authorized under its Articles of Incorporation to issue the necessary number of Common Shares which may be acquired via the Assignee's Conversion right and the shares of Common Stock issued upon the Conversion (the "Conversion Shares") will be validly issued, fully paid and non-assessable.

(b)  Subject to properly authorized issuance, the acquisition of Conversion Shares by the Assigned via Conversion will be exempt from registration under the Securities Act of 1933 (as amended and hereafter referred to as the "Act"'), pursuant exemption under section 5 of the ACT afforded by Section 4 (2) of the Act for the transactions by issuer not involving any public offering.

(c)   The Conversion Shares so acquired by the Assignee via Conversion will be exempt from any trading limitations typically imposed by Rule 144 promulgated under the Act ("Rule 144"), governing securities purchased without registration under Section 4 (2) of the Act, by reason of the effect of Sections 209.07 and 209.14 of Rule 144, given that (i) the Assignee's holding period is deemed to accrue from the date of the Note, and thus well beyond the "standard" one year holding period for securities acquired in a non-public transaction.

4.        Upon lawful issuance, the Assignee shall be issued shares amounting to less than 10%, of the issued and outstanding voting stock of Company.

5.        Upon lawful issuance of the Conversion Shares, the Assignee will not be deemed to be an affiliate of Company.

6.        Concerning the legal status of Company, the following clauses of this opinion are applicable:

A.        SPECIFIC FACTS AND ASSUMPTIONS

(1)        The Company is a Wyoming corporation duly incorporated and in good standing, has a legal corporate existence and is duly authorized to transact business under the laws of the State of Wyoming. The Company currently trades under trading symbol MYEC.

(2)        In connection with rendering this opinion. I have examined the Articles of Incorporation, as amended, and Bylaws of the Company; and certain public records to assist me in rendering this opinion. In addition, I have had several conversations with personnel affiliated with the company.

(3)        In examining each of the foregoing documents, I have assumed the authenticity of signatures (both manual and conformed),  the authenticity of documents submitted as originals, the conformity with originals of all documents furnished as copies, and the correctness of the facts set forth in such documents. I have also assumed all oral representations in connection with this matter to be accurate. Nothing came to my attention during the course of my investigation that led me to conclude that any of such documents were not genuine or authentic or that the facts set forth therein were not true. All filings with the OTC Markets, Inc. were also reviewed. There was a limited scope of documents available on OTC Markets, Inc.

(4)        The transfer agent is currently Signature Stock Transfer, Inc. Signature Stock Transfer, Inc. . is registered with the Securities & Exchange Commission. The number of issued and outstanding shares, which was confirmed by reviewing a shareholder list dated July 31, 2013 herewith, is 4,142,470,000.

(5)        After consultations with Edward R Starrs, Chief Executive Officer of the Company, I am satisfied that no individual officer, 10% shareholder or the Assignee is currently under any investigation in any jurisdiction. With respect to the Assignee, I  have made specific inquiry to determine that (a) it has not has sold or transferred any securities of the Company within the  past 12 months, and (b) nothing has come to my attention indicating that the Assignee is in possession of any material non-public information regarding the Company or the securities of the Company that would prohibit it either of buying or selling the securities of Company that would prohibit it either buying or selling the securities as a non-affiliate of the Company as defined by paragraph (a) (1) of Rule 144.

(6)        As of the date of this letter, the information  posted by the Company on the OTC Markets, Inc. (i) constitutes "adequate current public information" concerning the Securities and the Company and "is available" within the meaning of Rule 144 ( c) (2) of the Securities Act, (ii) includes all of the information that a broker-dealer would be required to obtain from the Company to publish a quotation under the Securities and Exchange Act of 1934 (the "Exchange Act") and (iii) complies as to form with the OTC

Markets' Guidelines for Providing "Adequate Current Information."  However my opinion does not alleviate the professional responsibilities of brokers, dealers, and investors to conduct their own professional diligence.


B.   OPINION

(1)    It is my opinion, as of the date of this letter, the information posted with the OTC Disclosure and News Service (i) constitutes "adequate current public information" concerning the Company and  "is available" within the meaning of the Securities and Exchange Act of 1934 (the "Exchange Act"), (ii) includes all of the information that a broker-dealer would be required to obtain from the Company to publish a quotation for the Securities under Sections 13 or 15(d) of the Exchange Act, (iii)  Complies as to form with the OTC Markets' Guidelines for Providing "Adequate Current Information" which as  posted at www.otcmarkets.com, and (iv) has been posted through the OTC Disclosure and News Services.

(2)    The Note is a binding obligation of the Company and that (i) a portion of the Note was duly assigned by Tangiers Investors LP. to the Assignee, and (ii) the holding period for purposes of Rule 144 tacks to the original date of the Original Note, June 26, 2009, which is more than one (1) year from the date hereof.

(3)  Based on the foregoing, the Assignee is entitled to receive share certificates for the number of shares of common stock of MYECHECK Inc., as set forth in the Notice, i.e., 300,000,000 a, bearing no restrictive legend conditions, and such shares shall be eligible for any subsequent sales, without registration, as long as the other conditions of Rule 144 have been met.  The documents provided this firm show that the Assignee is not then, nor has been, an officer, director nor an affiliate of the Company and that the Company is not a "shell" company as that term is defined under Rule 144(i)(1)(i), but rather a development stage company.

This opinion is solely for MYECHECK, Inc. and its Transfer Agent, Signature Stock Transfer, Inc., and shall not be published or reproduced in any manner or distributed or circulated to any person or entity without the express written consent of the undersigned.  This opinion is limited to the matters stated herein, and I assume no obligation to advise you of any changes in the opinions expressed herein from matters which might arise, or be brought to my attention subsequent to the date of this letter.


Very truly yours,

Thomas O. Russell



May 15, 2013

*Prior Deposit*

Scottsdale Capital Advisors Corp.
7170 E. McDonald Drive, Suite 6
Scottsdale, AZ 85253

Re:   Security Description:
      Company:          MyECheck, Inc.
      No. Shares:       350,000,000
      Certificate No.:    2056 - 2069
      Holder Name:     Sweetsun Intertrade Inc.

Ladies and Gentlemen:

I, the undersigned ED Stars CEO of MyECheck, hereby represent and certify that:

1.  Security derives from a Convertible Note ("Note") dated June 26, 2009 in the principal amount of $32,200, issued to Tangiers Investors LP ("Seller"). We have been advised that Seller assigned a portion of the Note to Holder in a private transaction on or about May 5, 2013. Holder and Seller are further collectively referred to as Parties herein.

2.  The above referenced Security is validly issued, there are no adverse claims pertaining to this Security and the shares are free trading and will not be retracted at a later date.

3.  The debt represented by the Note was lawfully incurred for valuable consideration received and reflected in the Company's financials as a liability as of June 26, 2009.

4.  There is no agreement or other arrangement between Company and Parties to remit any portion of the proceeds from the resale of the Security to Company.

5.  To Company's best knowledge, the Parties are not beneficial owners of 10% or more of any class of equity securities of the Company.

6.  The Parties are not, or were not 90 days prior to the sale, a director, officer or an "Affiliate" of the Company as that term is used in paragraph (a) of Rule 144 of the Securities Act of 1933 (i.e., a person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with the Company).

7.  The Company has never been and was not at the time of issuance of the Security a "shell company" as defined in Rule 144(i)(1)(i). For purposes of Rule 144(i)(1)(i), a shell company is a company that has no or nominal operations and either: (i) no or nominal assets; (ii) assets consisting solely of cash and cash equivalents: or (iii) assets consisting of any amount of cash and cash equivalents and nominal other assets.

*MyEcheck INC*
*6026 Laredo Way, El Dorado Hills, CA  95762  USA*
*Website : www.myecheck.com*
*Phone: (916) 222-4376  Fax: (866) 419-0363*



8.  The remaining principal balance including interest of the Note, after taking into consideration all debt conversions to date, is $36.758.20 with interest through June 2012.

Scottsdale Capital Advisors is permitted to rely on the above representations in accepting the deposit of the Shares into a brokerage account for resale.

Sincerely

By: Ed Starrs
Its: CEO

*MyEcheck INC*
*6026 Laredo Way, El Dorado Hills, CA  95762  USA*
*Website : www.myecheck.com*
*Phone: (916) 222-4376  Fax:  (866) 419-0363*

EXHIBIT 2

**Mike Cruz**

| | |
|---|---|
| **From:** | BRIAN KATZ <bkatzlaw@gmail.com> |
| **Sent:** | Friday, February 06, 2015 4:32 PM |
| **To:** | Mike Cruz |
| **Cc:** | BRIAN KATZ |
| **Subject:** | Re: My Echeck Complaint CV02889-KJM-AC |

Mr. Cruz,

Thank you for providing the documents.

I will review them and discuss them with my client.

Yes, you may have an extension of time to file a response while we work to resolve this matter.

I suggest 35 days, or until March 13, 2015.  Is that satisfactory?

Thank you.

Brian

**BRIAN R. KATZ**
**Attorney at Law**
**4364 Town Center Blvd., Suite 207**

**El Dorado Hills, California  95762**

**916-933-5266**
**916-933-7866 (Facsimile)**