1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MYECHECK, INC.,                              No.  2:14-cv-02889-KJM-AC

12                   Plaintiff,

13          v.                                    ORDER AND FINDINGS &
                                                  RECOMMENDATIONS
14   TITAN INTERNATIONAL SECURITIES,
     INC., et al.,
15
                    Defendants.
16

17          On March 2, 2016, the court held a hearing on plaintiff's motions for default judgment

18   against defendants Titan International Securities, Inc. ("Titan") and Sweetsun Intertrade, Inc.

19   ("Sweetsun").  Brian Katz appeared on behalf of plaintiff MyECheck, Inc.  Titan and Sweetsun

20   failed to appear.  On review of the motions, the documents filed in support and opposition, and

21   good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

22                                  PROCEDURAL HISTORY

23          Plaintiff filed its complaint on December 11, 2014.  ECF No. 1.  Approximately five

24   months later, no other party had appeared, and the court issued an order for plaintiff to show

25   cause why its complaint should not be dismissed for failure to prosecute.  ECF No. 7.  Plaintiff

26   responded and reported it had completed service on former defendants Seven Miles Securities

27   ("Seven Miles") and Scottsdale Capital Advisors Corporation ("Scottsdale"), but Titan and

28   Sweetsun's foreign status made service difficult.  ECF No. 12 (citing Article 2 of the Hague

                                                  1

1    Convention).  On May 19, 2015, the court discharged its order to show cause and granted plaintiff

2    sixty days to file proof of service upon Titan and Sweetsun.  ECF No. 17.

3         On June 1, 2015, Scottsdale filed a motion to dismiss plaintiff's claims against it under

4    Rule 12(b) or (d).  ECF No. 19.  On July 22, 2015, plaintiff filed proof of service upon Sweetsun.

5    ECF No. 25.  On October 19, 2015, the court granted Scottsdale's motion with prejudice and

6    without leave to amend.  ECF No. 30.  On December 3, 2015, plaintiff filed a status report

7    explaining that an attorney for Sweetsun in Nevada had contacted counsel for plaintiff and stated

8    she was not licensed to practice in California.  ECF No. 31 at 2.  Plaintiff's counsel informed her

9    that plaintiff would nevertheless move for the entry of default against Sweetsun if it did not

10   respond.  Id.  Plaintiff also stated that it would soon dismiss Seven Miles from the case, as they

11   had come to a settlement.  Id.  Finally, plaintiff stated it had retained the services of an attorney in

12   Belize to serve Titan.  Id.

13        On December 8, 2015, plaintiff voluntarily dismissed Seven Miles from the case and

14   requested entry of default against Sweetsun.  ECF Nos. 32, 33.  On December 10, 2015, plaintiff

15   filed proof of service upon Titan and the clerk of the court entered default against Sweetsun.  ECF

16   Nos. 34, 35.  On the same day plaintiff, but no defendant, appeared at a pretrial scheduling

17   conference before Judge Mueller.  ECF No. 37.  On January 8, 2016, the court ordered plaintiff to

18   seek default judgement against Sweetsun by January 11, 2016, and seek an entry of default

19   against Titan if it did not file a timely response.  ECF No. 38.  On January 11, 2016, plaintiff filed

20   a motion for default judgment against Sweetsun.  ECF Nos. 39, 40.

21        On January 12, 2016, plaintiff requested the clerk enter default against Titan.  ECF No.

22   42.  On January 15, 2016, the clerk entered default against Titan.  ECF No. 43.  On January 29,

23   2016, plaintiff filed a motion for entry of default judgment against Titan.  ECF Nos. 44, 45.

24                                    UNDERLYING FACTS

25        Because default has been entered against Sweetsun and Titan, plaintiff's factual

26   allegations are taken as true in disposing of its motions for default judgment.  See Geddes v.

27   United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v. Nop, 549 F. Supp.

28   2d 1233, 1235 (E.D. Cal. 2008).

1    In its October 19, 2015, order grating Scottsdale's motion to dismiss the court summarized

2    the facts alleged in plaintiff's complaint as follows:

3        In 2012, Sweetsun told MYEC it had purchased a $32,200
         promissory note from Tangiers Investors, L.P., entitling it to
4        MYEC shares. Compl. ¶¶ 10−12, ECF No. 1. Sweetsun had never
         actually purchased a promissory note and had no right to the shares.
5        Id. ¶ 16. Oblivious to the fraud, MYEC issued shares to Sweetsun
         and Titan, as directed by Sweetsun. Id. ¶¶ 13−14. MYEC believes
6        the shares issued to Titan were sent to Scottsdale. Id. ¶ 14.
         Sweetsun also induced MYEC's transfer agent to issue additional
7        shares in MYEC, none of which were authorized, including shares
         sent to Seven Mile and Sweetsun. Id. ¶ 17.
8
         MYEC discovered the fraud in October 2013. Id. ¶ 18. On
9        about November 13, 2013, MYEC contacted Scottsdale and
         requested it freeze trading in the fraudulent shares. Id. ¶ 23.
10       Scottsdale froze the shares temporarily, but on January 16, 2014, it
         emailed MYEC to say it could not continue a freeze without a
11       temporary restraining order. Id. ¶ 24. The remaining 560,005,000
         shares, held by Seven Miles, Titan, and an unknown entity are
12       currently worth about $16 million. Id. ¶¶ 28–29.

13   ECF No. 30 at 1–2.

14                                LEGAL STANDARDS

15       It is within the sound discretion of the district court to grant or deny an application for

16   default judgment.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

17   determination, the court considers the following factors:

18       (1) the possibility of prejudice to the plaintiff, (2) the merits of
         plaintiff's substantive claim, (3) the sufficiency of the complaint,
19       (4) the sum of money at stake in the action, (5) the possibility of a
         dispute concerning the material facts, (6) whether the default was
20       due to excusable neglect, and (7) the strong policy underlying the
         Federal Rules of Civil Procedure favoring decisions on the merits.
21

22   Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "In applying this discretionary

23   standard, default judgments are more often granted than denied."  Philip Morris USA, Inc. v.

24   Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting PepsiCo, Inc. v.

25   Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

26       As a general rule, once default is entered, the factual allegations of the complaint are taken

27   as true, except for those allegations relating to damages.  Tele Video Systems, Inc. v. Heidenthal,

28   826 F.2d 915, 917–18 (9th Cir. 1987) (citations omitted).  However, although well-pleaded

                                        3

1   allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not

2   contained in the pleadings, and claims which are legally insufficient, are not established by

3   default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

4   DISCUSSION

5   I.   Service of Process

6        Before considering the Eitel factors, the court must "assess the adequacy of service of

7   process on the party against whom default is requested." Bd. of Trs. of the N. Cal. Sheet Metal

8   Workers v. Peters, No. C–00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2,

9   2001).  Plaintiff alleges that both Sweetsun and Titan are corporations "established under the laws

10  of the country of Belize."  ECF No. 1 at 2–3.  However, plaintiff's moving papers and attached

11  declarations failed to set forth the requirements for service of process on corporations located in

12  Belize.  Accordingly, the court provided plaintiff the opportunity to address the matter in a

13  supplemental post-hearing brief.  On March 9, 2016, plaintiff filed a supplemental brief in support

14  of its motions for default judgment, and a supplemental declaration of counsel.  ECF Nos. 50, 51.

15  In light of these submissions, the court finds that Sweetsun and Titan have been properly served.

16       The declaration of plaintiff's counsel includes as attachments a number of documents

17  relevant to the service question, including: (1) the Convention of 15 November 1965 on the

18  Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague

19  Service Convention"); (2) Table Reflecting Applicability of Article 8(2), 10(a) (b), and (c), 15(2)

20  and 16(3) of the Hague Service Convention ("Applicability Table"); (3) the Supreme Court of

21  Belize's Civil Procedure Rules, 2005 ("Civil Procedure Rules of Belize"); (4) Proof of Service on

22  Sweetsun; and (5) Proof of Service on Titan.  ECF No. 51.

23       In cases where service must be effected upon foreign nationals abroad, Rule 4(f) requires

24  the use of an "internationally agreed means" of service, allowing otherwise only if there are no

25  such means.  Fed. R. Civ. P. 4(f)(2).  The Supreme Court has held that the Hague Service

26  Convention is the primary means of such service, and that "compliance with the Convention is

27  mandatory in all cases to which it applies."  Volkswagenwerk AG v. Schlunk, 486 U.S. 694, 705

28  (1988).  A review of the Hague Conference on Private International Law's website reveals that

4

1   Belize is a non-member signatory of the Hague Service Convention.  Status Table, HAGUE

2   CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/instruments/

3   conventions/status-table/?cid=17 (last updated March 16, 2016).  In other words, Belize is not a

4   member of the Hague Conference, but is a signatory to the Hague Service Convention.  How to

5   Read the Status Table, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.

6   hcch.net/en/instruments/conventions/specialised-sections/read-the-status-table1 (last visited

7   March 29, 2016).  Accordingly, the Hague Service Convention governs service upon Sweetsun

8   and Titan because both the country where the documents are to be transmitted for service (Belize)

9   and the country where the documents originate (the United States) are signatories.  See id.; Status

10  Table, supra.

11      Plaintiff argues that the method of service it utilized is proper under Article 10 of the

12  Hague Service Convention.  Article 10 of the Hague Service Convention states that "provided the

13  State of destination does not object," it shall not interfere with the freedom of "judicial officers"

14  or "any person interested in a judicial proceeding" from effecting service of judicial documents

15  directly through "the judicial officers, officials or other competent persons of the State of

16  destination."[1]  ECF No. 51 at Exh. A.  Plaintiff states that it served Titan and Sweetsun in

17  accordance with Article 10 by engaging the services of a Belizean law firm which personally

18  served the Registered Agents for Service of each of the entities.  It is entirely unclear to the

19  undersigned, however, that a private law firm satisfies Article 10's definition of "judicial officers,

20  officials or other competent persons of the State of destination."

21      Plaintiff seems to believe that "other competent persons of the State of destination" means

22  residents, or perhaps citizens of the State of destination, but there is little evidence to support this

23  interpretation.  Plaintiff does not, for example, offer any Belizean authority interpreting the

24  phrase "other competent persons of the State of destination."  The phrase itself, read in context,

25  suggests an alternative interpretation encompassing not all competent persons *located in* the State,

26  but all judicial officers, officials, and other competent persons *employed by* the State.  The court's

27  ───────────────

28  [1]  The Applicability Table reflects that Belize does not oppose any part of Article 10.  Id. at Exh.
    B.

5

1   own research into the language of Article 10 has revealed at least one case that would seem to

2   support this interpretation.  See Rosen v. Netsaits, 294 F.R.D. 524, 528 (C.D. Cal. 2013) (holding

3   that in accordance with the law of the Netherlands only bailiffs constitute "judicial officers,

4   officials or other competent persons of the State of destination").

5          Nevertheless, the court finds that service upon Titan and Sweetsun was proper under the

6   Civil Procedure Rules of Belize.  Article 19 of the Hague Service Convention provides that

7   service of documents from abroad may be made by any method permitted by the internal law of

8   the receiving state.  Rule 5.7 of the Civil Procedure Rules of Belize state that service on a limited

9   liability company can be effected by "serving the claim form personally on the registered agent of

10  the company."  Id. at Exh. C.  Plaintiff has filed proofs of personal service upon the registered

11  agents for service for both Titan and Sweetsun by attorneys in Belize.  Id. at Exh. D, E.

12  Accordingly, plaintiff's method of service was proper under Article 19 because it served Titan

13  and Sweetsun pursuant to Rule 5.7(e) of the Civil Procedure Rules of Belize.

14  II.    The Eitel Factors

15         Although Titan and Sweetsun were properly served, consideration of the Eitel factors

16  leads to the conclusion that default judgment is inappropriate at this time, because the complaint

17  does not allege facts sufficient to state a claim for fraud against Sweetsun or to support

18  declaratory relief against Titan.

19         A.     Factor One: Possibility of Prejudice to Plaintiff

20         The first Eitel factor considers whether the plaintiff would suffer prejudice if default

21  judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

22  a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially

23  face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment,

24  plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel factor

25  favors the entry of default judgment.

26         B.     Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the

27                Sufficiency of the Complaint

28         Given the close relationship between the merits of plaintiff's substantive claims and the

1  sufficiency of the complaint, these factors can be discussed jointly.  Effectively, factors two and

2  three amount to a requirement that the allegations in the complaint be sufficient to state a claim

3  that supports the relief sought.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978);

4  PepsiCo, Inc., 238 F. Supp. 2d at 1175.

5       Plaintiff does not allege facts sufficient to state a claim for fraud against Sweetsun.  In

6  diversity cases, federal courts will look to state law to determine whether the elements of fraud

7  have been pled sufficiently to state a cause of action.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d

8  1097, 1103 (9th Cir. 2003).  Under California law, "'[t]he elements of fraud are: (1) a

9  misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

10  (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting

11  damage.'"  County of Santa Clara v. Atlantic Richfield Co., 137 Cal. App. 4th 292, 329 (2006)

12  (quoting Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004)).

13       However, even in state-law causes of action, federal courts must apply Rule 9(b)'s

14  requirement that the circumstances of the fraud must be stated with particularity.[2]  Vess, 317 F.3d

15  at 1103 ("it is established law. . . that Rule 9(b)'s particularity requirement applies to state law

16  causes of action.").  "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail

17  with particularity the time, place, and manner of each act of fraud, plus the role of each defendant

18  in each scheme."  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th

19  Cir. 1991).  "Averments of fraud must be accompanied by 'the who, what, when, where, and

20  how' of the misconduct charged."  Vess, 317 F.3d at 1106.  "'[A] plaintiff must set forth *more*

21  than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is

22  false or misleading about a statement, and why it is false.'"  Id. (quoting In re GlenFed, Inc. Sec.

23  Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as

24  stated in Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297, 1309 (C.D. Cal.

25  1996)).  "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the

26

27  ───────────────

   [2]  Rule (b) states that "[in] all averments of fraud or mistake, the circumstances constituting fraud
   or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of
28  mind of a person may be averred generally."

1  defendant can prepare an adequate answer from the allegations.'" <u>Schreiber Distrib. Co. v. Serv-</u>

2  <u>Well Furniture Co.</u>, 806 F.2d 1393, 1400 (9th Cir. 1986).

3        Plaintiff alleges that Sweetsun was able to secure the transfer of 560,005,000 shares of

4  stock, worth about $16 million, to Seven Miles and Titan.  ECF No. 1 at 7.  The details of how

5  that fraudulent transfer came about are too unclear, however, to satisfy Rule 9(b)'s particularity

6  requirement.  Plaintiff first alleges that Sweetsun secured the transfer of 255,000,000 shares by

7  misrepresenting that it owned the promissory note issued to Tangiers Investors, L.P. ("Tangiers").

8  <u>Id.</u> at 4.  Based on that misrepresentation, plaintiff issued 255,000,000 shares to Titan.  <u>Id.</u> at 5.

9  Subsequently, plaintiff alleges that Sweetsun "caused plaintiff's transfer agent to fraudulently

10  issue additional shares in MYEC, none of which was authorized by plaintiff MYEC."  <u>Id.</u>

11  Plaintiff summarizes the transfers that took place as follows:

12            01-04-2013    SEVEN MILE    275,000,000

13            01-09-2013    SWEETSUN    260,000,000

14            05-10-2013    SWEETSUN    350,000,000

15            08-22-2013    SWEETSUN    300,000,000

16  Id.

17        These allegations simply do not suffice under Rule 9(b)'s standards.  Plaintiff does not

18  specify the "who, what, when, where, and how" of Sweetsun's alleged initial misrepresentation

19  that it owned Tangiers's promissory note.  Was the misrepresentation oral or in writing?  Which

20  officers, employees or agents of Sweetsun and MYEC were parties to the communication(s)

21  alleged to misrepresent ownership of Tangiers's promissory note?  The complaint does not say.

22        The second instance of Sweetsun "caus[ing] plaintiff's transfer agent to fraudulently issue

23  additional shares in MYEC" to Seven Mile and Sweetsun is even less clear.  <u>Id.</u> at 5.  Most

24  importantly, plaintiff does not explain *how* Sweetsun caused the transfer agent to issue MYEC

25  shares the second time around.  Did Sweetsun claim that it was entitled to these shares based on

26  its asserted ownership of the promissory note, or was there some other basis?  And finally, if

27  Sweetsun secured these allegedly fraudulently obtained shares by claiming to possess a $32,200

28  promissory note, how is it that Sweetsun came to defraud plaintiff out of $16,000,000 worth of

1   shares?  None of these questions are answered by plaintiff's complaint.

2          In plaintiff's supplemental brief it argues that its complaint is sufficient under the relaxed

3   Rule 9(b) standards applicable to "matters peculiarly within the opposing party's knowledge."

4   ECF No. 50 at 5 (citing Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987),

5   overruled on other grounds by Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir.

6   1990)).  However, plaintiff does not explain how any of the facts in the previous paragraph that

7   do not appear in plaintiff's complaint are "matters peculiarly within the opposing party's

8   knowledge."  Accordingly, the court finds that plaintiff's complaint does not allege facts

9   sufficient in light of the Rule 9(b) standard and factors two and three do not favor default

10  judgment.[3]

11         C.      Factor Four: The Sum of Money at Stake in the Action

12         The fourth Eitel factor, the sum of money at stake, weighs against default judgment.

13  Default judgment is disfavored when a large amount of money is involved or is unreasonable in

14  light of the defendant's actions.  See Truong Giang Corp. v. Twinstar Tea Corp., No. C 06–03594

15  JSW, 2007 WL 1545173, at * 12 (N.D. Cal. May 29, 2007).  Here, plaintiff seeks a declaratory

16  judgment that it owns $16,000,000 worth of stocks.  ECF No. 1 at 7, 9.  Plaintiff also seeks

17  punitive damages totaling $16,000,000 against Sweetsun.  ECF No. 40.  The court finds the

18  foregoing amounts to be more than enough to weigh against default judgment at this point in the

19  proceedings.

20         D.      Factor Five: The Possibility of a Dispute Concerning Material Facts

21         There is little potential for dispute concerning the material facts in this matter, as

22  Sweetsun and Titan have yet to appear.  The court may assume the truth of well-pleaded facts in

23  the complaint following the clerk's entry of default.  See, e.g., Elektra Entm't Group Inc. v.

24  Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded

25  complaint are taken as true after the court clerk enters default judgment, there is no likelihood that

26

27  [3]  Plaintiff's declaratory relief claims against Titan and Sweetsun are based on his fraud claim
    against Sweetsun.  ECF No. 1 at 7–8.  Accordingly, plaintiff's failure to state a claim for fraud
28  against Sweetsun means it has not stated a claim for declaratory relief either.

1   any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500;

2   PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, the fifth factor weighs in favor of granting

3   plaintiff's motions for default judgment.

4          E.      Factor Six: Whether the Default Was Due to Excusable Neglect

5          Sweetsun and Titan's defaults likely were not the result of excusable neglect.  Plaintiff

6   personally served defendants with the summons and complaint.  Despite notice of this lawsuit

7   defendants have failed to participate in this action.  Thus, the record suggests that Titan and

8   Sweetsun have chosen not to defend this action, and not that the default resulted from any

9   excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

10         F.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure

11                 Favoring Decisions on the Merits

12         "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

13  F.2d at 1472.  District courts have concluded with regularity that this policy, standing alone, is

14  not dispositive, especially where a defendant fails to appear or defend itself in an action.

15  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.

16  Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, 2010 WL

17  144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished).  However, the second, third, and fourth

18  factors also weigh in favor of denying plaintiff's motions in this matter.  Accordingly, this factor

19  weighs in favor of denying plaintiff's motions.

20  III.   Leave to Amend

21         Plaintiff's supplemental brief in support of its motion for default judgment requests that,

22  in the alternative, the court grant it leave to amend the complaint so it can allege its fraud claims

23  with more particularity.  ECF No. 50 at 8.  A court should freely grant leave to amend a pleading

24  when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "[A] district court should grant leave to amend

25  . . . unless it determines that the pleading could not possibly be cured by the allegation of other

26  facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The court finds that plaintiff may

27  be able to plead sufficient facts to state a claim if given leave to amend.  Accordingly, the court

28  will recommend that plaintiff be granted leave to amend its complaint.

CONCLUSION

THE COURT HEREBY ORDERS that the Clerk of the Court shall serve copies of this order upon Titan and Sweetsun at:

- Sweetsun Intertrade, Inc.

  Re: Morgan and Morgan Trust Corporation

  Whitfield Tower, Third Floor

  4792 Covey Dr.

  Belize City, Belize

- Titan International Securities, Inc.

  46 Dean Street

  Belize City, Belize

THE COURT FURTHER RECOMMENDS that:

1. Plaintiff's motions for default judgment, ECF No. 39, 44, be DENIED without prejudice; and

2. Plaintiff be granted thirty days from the issuance of the district judge's order to file an amended complaint addressing the deficiencies discussed in these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 30, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11